IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No.** 24-090 (FAB)

MARÍA DE LOURDES MARTÍNEZ-
GARRIGA,

    **Defendant.**

OPINION AND ORDER

BESOSA, Senior District Judge.

    The United States moves to exclude evidence suggesting that the United States Postal Service ("USPS") failed to prevent the delay of election mail. (Docket No. 121.)  For the reasons set forth below, the United States' motion is **GRANTED.**

**I.  Background**[1]

    In September 2022, the Puerto Rico State Elections Commission ("CEE") held a special election for the San Juan, Puerto Rico District 1 Senate vacancy. (Docket No. 3 at p. 2.)[2]  The CEE sent eligible voters "election mail" (<u>i.e.</u> ballots and voter registration cards) in anticipation of this election.  <u>Id.</u> Officials instructed the United States Postal Service ("USPS") to

---

[1] The following allegations are set forth in the indictment.  (Docket No. 3.)

[2] The Court refers to the Puerto Rico State Elections Commission by the Spanish acronym for "Comisión Estatal de Elecciones."

Criminal No. 24-090 (FAB)                                                    2

deliver these ballots and voter registration cards *via* certified mail.  Id.

Martínez worked as a USPS city carrier at the 65th Infantry Postal Office in San Juan, Puerto Rico.  Id. at p. 3.  City carriers have a "duty to protect, collect, and deliver all the mail entrusted to [them]" by the USPS.  Id.  In August 2022, Martínez purportedly "delayed and did not deliver election mail" to five residents at the Urbanización Villa Prades in San Juan, Puerto Rico (hereinafter, "recipients").  Id. at pp. 4-5.

On March 7, 2024, a grand jury returned an indictment charging Martínez with five counts of delaying or destroying mail in violation of 18 U.S.C. section 1703(a) ("section 1703(a)"). (Docket No. 3.)  Pursuant to this section, a USPS officer who "unlawfully secretes, destroys, detains, delays, or opens any letter, postal card, package, bag, or mail entrusted to him . . . and which was intended to be conveyed by mail" shall be fined or imprisoned not more than five years, or both.  18 U.S.C. § 1703(a). To sustain a section 1703(a) conviction, the United States must prove that defendant Martínez: (1) was a United States Postal Service ("USPS") employee; (2) committed an act that caused the mail to be detained or delayed; and (3) acted unlawfully.  See United States v. Molyneux, Case No. 24-4002, 2024 U.S. App. LEXIS

30416, at *6 (10th Cir. Dec. 3, 2024) (citing United States v. Scott, 993 F.2d 1520, 1521 (11th Cir. 1993)).

The Court subsequently issued a Memorandum and Order on December 23, 2024, emphasizing that this case "is not a referendum on the integrity of the electoral process or the legitimacy of certain 'requests' for 'mail in votes.'  The only question the jury must answer is whether Martínez is guilty of violating 18 U.S.C. section 1703(a)."  United States v. Martínez-Garriga, Case No. 24-090, 2024 U.S. Dist. LEXIS 234935, at *3 (D.P.R. Dec. 23, 2024) (Besosa, J.).  Trial commenced on January 21, 2025. (Docket No. 110.)  Fifteen witnesses testified on behalf of the United States, including USPS officials and the recipients of delayed mail.  (Docket Nos. 106, 110, 113, 132 and 137.)  The United States rested on the fifth day of trial.  (Docket No. 137.)

Martínez disclosed reciprocal discovery to the United States just before and during trial.  (Docket No. 121.)  This discovery consists of eleven exhibits, including text messages from Martínez to USPS personnel.  Id.  The United States moves to exclude this evidence, contending that Martínez is attempting to impugn the USPS.  Id. at p. 4.  It anticipates that Martínez will argue that "[USPS] employees knew or allowed the Defendant to delay mail." Id.  The United States cites Federal Rules of Evidence 402 and 403 in support of its motion to exclude evidence.  Id.

Criminal No. 24-090 (FAB)                                                4

## II.  Federal Rules of Evidence 402 and 403

Pursuant to Federal Rule of Evidence 402, "[r]elevant evidence is admissible unless any of the following provides otherwise:  the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed. R. Evid. 402.  "Irrelevant evidence is not admissible." Id. "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Of course, not all relevant evidence is admissible.  Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. District courts possess broad discretion in determining the admissibility of evidence.  See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (internal quotation marks omitted).  Because the Rule 403 inquiry is "quintessentially a fact-sensitive enterprise," district courts are "in the best position to make such fact-bound assessments."  Neece v. City of Chicopee, 106 F.4th 83, 96 (1st Cir. 2024) (internal citation and quotation omitted).

## III. Discussion

Martínez cites broad legal principles in opposition to the United States' motion to exclude. (Docket No. 140.) For instance, Martínez dedicates three pages to Federal Rule of Evidence 106 ("Rule 106"), bestowing the Court and the United States with a primer on the rule of completeness. Id. at pp. 4-7. She then argues without explanation that "the texts are appropriate to give context to the jury to determine what weight, if any, the jury must give to the alleged admission for which two witnesses testified." Id. at p. 7. No additional information is provided. Which text messages are subject to Rule 106? Martínez does not specify which "two witnesses" made the "alleged admission[s]." Id.

Martínez "refuse[s]" to reveal her theory of the case, but then claims that she "could argue that the allegations or unlawful conduct would not have been committed but for the employer, who is the one responsible for assessing and supervising its employees." Id. According to Martínez, "[blaming] someone else for the commission of crime is so universally accepted that there are situations where the Supreme Court has decided that the mere possibility of such defense violates the right to a fair trial of another co-defendant and severance is required." Id. (citing Bruton v. United States, 391 U.S. 123 (1968)). Martínez is the

Criminal No. 24-090 (FAB)                                          6

sole defendant named in the indictment, however, rendering <u>Bruton</u>
and precedent pertaining to severance inapposite.

From what the Court can decipher, Martínez is asserting that
the USPS caused her to delay delivery of the five ballots.  She
does not specify, however, how precisely the USPS is the "but for"
cause of her actions.  (Docket No. 140 at p. 7.)  The Court is not
aware of, and Martínez does not cite, legislative or judicial
authority setting forth an applicable affirmative defense.  The
defense proposed by Martínez is reminiscent of vicarious
liability, a doctrine holding a "supervisory party (such as an
employer) [responsible] for the actionable conduct of a
subordinate or associate (such as an employee) based on the
relationship between the two parties." <u>MacArthur v. O'Connor
Corp.</u>, 653 F. Supp. 2d 112, 116 (D.R.I. 2009) (quoting Black's Law
Dictionary 934 (8th Ed. 2004)).

The indictment in this criminal action does not charge
Martínez with conspiracy:  There are no named or unindicted co-
conspirators responsible for delaying the delivery of mail.  Even
if the Court were to presume that the USPS somehow contributed to
or caused the unlawful delay of the mail, Martínez does not explain
how the acts or omissions of a third-party negate criminal
liability in a section 1703(a) prosecution.  Essentially, Martínez
presents a false dichotomy between herself and the USPS.  Both

propositions may be true:  Martínez delayed the delivery of mail
**and** the USPS failed to implement applicable policies and
regulations.   Accordingly, evidence that the USPS caused,
contributed, or facilitated a delay in delivering election mail is
irrelevant and may confuse the jury.  This evidence may compel the
trier of fact to acquit Martínez based on the bad acts of a third
party irrespective of the proof presented at trial.

Because Martínez did not address the admission of specific
exhibits, the Court will decide the United States' motion *in limine*
in the context of trial.  The Court reiterates, however, that
evidence concerning the USPS and its failure to prevent delay in
delivering election mail is inadmissible pursuant to Federal Rule
of Evidence 403.  Testimony regarding this purported failure will
require the Court to conduct a mini trial, wasting judicial
resources to determine whether the USPS complied with pertinent
regulations.  See, e.g., United States v. Condron, 98 F.4th 1, 27
(1st Cir. 2024) ("The district court properly balanced Condron's
interest in cross-examining Colman about the MRPC against its
concerns that such questioning would confuse the jury and/or elicit
testimony that was irrelevant to the issues at hand . . . allowing
Condron to cross-examine Colman about the MRPC would have created
a mini trial about whether Colman violated the Rules.") (citing
United States v. DeCologero, 530 F.3d 36, 60 (1st Cir. 2008)

(holding that "the trial judge still has discretion under Rule 403 to exclude [evidence] if it would distract from the main issues of the case") (citation omitted)).

Martínez sets forth the following exhibits which she wants to present during her case in chief:

**Exhibit 1:**  Two text messages sent to "Soto Sup Usps" on October 18, 2021, stating:  "Who gives us the clearance of the values?  Are you at the station?  For the clearance."  (Docket No. 121 at p. 9.)  On May 2, 2023, Martínez sent text messages to "Figueroa CCA 65" concerning, *inter alia*, "the seriousness of not filling out the 134 sheets." Id. at pp. 10-12.

**Exhibit 2:**  An undeliverable mail report from August 5, 2022. Id. at p. 13.

**Exhibit 3:**  "Publication 28," a document setting forth "Puerto Rico's common addressing style." Id. at p. 14. Exhibit 4: An April, 14, 2022 e-mail from Sandra Figueroa regarding the delivery of political mail. Id. at pp. 15-20.

**Exhibit 5:**  A July, 30, 2022 Report of Hazard, Unsafe Condition or Practice alleging that "the function to send text messages on scanners has been disabled." Id. at p. 21.

**Exhibit 6:**  A message sent on October 2 (year not specified) requesting written instructions regarding the delivery of political mail. Id. at p. 22.

**Exhibit 7:**  A message sent on October 4 (year not specified) "[asking] for written instructions on how HQ from San Juan want [*sic*] us to handle election mail since they are different from those already stipulated in the handbook." Id. at p. 23.

**Exhibit 8:**  A message sent on August 16 (year not specified) stating that "carriers are allowed to bring

anything back to the office before contact [*sic*] your supervisor as a direct order." Id. at p. 24.

**Exhibit 9:** A message sent on November 10 (year not specified) stating in part that "anything back is categorized as delay of mail without authorization." Id. at p. 9.

**Exhibit 10:** A Undelivered Mail Report from November 10, 2022. Id. at p. 26.

**Exhibit 11:** A November 10, 2022 request for overtime. Id. at p. 27.

Martínez sets forth no explanation concerning the relevance of specific exhibits. For example, the indictment avers that Martínez violated section 1703(a) in August 2022. (Docket No. 3 at p. 4.) Exhibit 1 contains text messages from 2021 and 2023, neither of which are contemporaneous with the alleged violations of section 1703(a). The other exhibits go to the improper intent to shift the blame on the USPS.

## IV.   Conclusion

For the reasons set forth above, the United States' motion to exclude evidence suggesting that the USPS failed to prevent the delay of election mail is **GRANTED.** (Docket No. 121.)

The parties **SHALL NOT** elicit testimony or adduce evidence establishing that the USPS caused, contributed, or facilitated a delay in delivering election mail.

Trial is continued until **Monday, February 3, 2025 at 9:00 a.m.** in OSJ Courtroom 5.

Criminal No. 24-090 (FAB)                                          10

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 31, 2025.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE