IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                   **Criminal No.** 24-090 (FAB)

MARÍA DE LOURDES MARTÍNEZ-
GARRIGA,

    **Defendant.**

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court is defendant María Martínez-Garriga ("Martínez")'s motion for a mistrial. (Docket No. 133.) For the reasons set forth below, Martínez's motion is **DENIED**.

**I.   Background[1]**

In September 2022, the Puerto Rico State Elections Commission ("CEE") held a special election for the San Juan, Puerto Rico District 1 Senate vacancy. (Docket No. 3 at p. 2.)[2] The CEE sent eligible voters "election mail" (i.e. ballots and voter registration cards) in anticipation of this election. Id. Officials instructed the United States Postal Service ("USPS") to

---

[1] The following allegations are set forth in the indictment. (Docket No. 3.)

[2] The Court refers to the Puerto Rico State Elections Commission by the Spanish acronym for "Comisión Estatal de Elecciones."

deliver these ballots and voter registration cards *via* certified mail.  Id.

Martínez worked as a USPS city carrier at the 65th Infantry Postal Office in San Juan, Puerto Rico.  Id. at p. 3.  City carriers have a "duty to protect, collect, and deliver all the mail entrusted to [them]" by the USPS.  Id.  In August 2022, Martínez purportedly "delayed and did not deliver election mail" to five residents at the Urbanización Villa Prades in San Juan, Puerto Rico (hereinafter, "recipients").  Id. at pp. 4-5.

On March 7, 2024, a grand jury returned an indictment charging Martínez with five counts of delaying or destroying mail in violation of 18 U.S.C. section 1703(a) ("section 1703(a)"). (Docket No. 3.)  Pursuant to this section, a USPS officer who "unlawfully secretes, destroys, detains, delays, or opens any letter, postal card, package, bag, or mail entrusted to him . . . and which was intended to be conveyed by mail" shall be fined or imprisoned not more than five years, or both.  18 U.S.C. § 1703(a). To sustain a section 1703(a) conviction, the United States must prove that defendant Martínez:  (1) was a United States Postal Service ("USPS") employee; (2) committed an act that caused the mail to be detained or delayed; and (3) acted unlawfully.  See United States v. Molyneux, Case No. 24-4002, 2024 U.S. App. LEXIS 30416, at *6 (10th Cir. Dec. 3, 2024) (citing United States v.

Scott, 993 F.2d 1520, 1521 (11th Cir. 1993)).    The Court

subsequently issued a Memorandum and Order on December 23, 2024,

emphasizing that this case "is not a referendum on the integrity

of the electoral process or the legitimacy of certain 'requests'

for 'mail in votes.'   The only question the jury must answer is

whether   Martínez   is   guilty   of   violating   18 U.S.C.

section 1703(a)."   United States v. Martínez-Garriga, Case No. 24-

090, 2024 U.S. Dist. LEXIS 234935, at *3 (D.P.R. Dec. 23, 2024)

(Besosa, J.).

        Trial commenced on January 21, 2025.    (Docket No. 110.)

Fifteen witnesses testified on behalf of the United States,

including USPS officials and the recipients of the mail that was

allegedly delayed.  (Docket Nos. 106, 110, 113, 132 and 137.)  The

United States rested on the fifth day of trial.  (Docket No. 137.)

Martínez called three witnesses in her case-in-chief.   (Docket

No. 158.)  On February 2, 2025, Martínez testified in her own

defense.  Id.  The Court subsequently denied Martínez's motion for

judgment of acquittal.  Id.  She requests that the Court declare

a mistrial pursuant to the Due Process Clause, the Confrontation

Clause, and the Federal Rules of Criminal Procedure.

## II.  Mistrial Standard of Review

        This Court possesses broad discretion in determining whether

a declaration of mistrial is warranted.  See, e.g., United States

v. Padilla-Galarza, 990 F.3d 60, 80 (1st Cir. 2021) (noting that
the appellate standard of review for denying a mistrial is a
"deferential" one, and that "[o]nly in in rare instances will we
. . . substitute our judgment for the trial court's first-hand
determination that the interests of justice could be served without
aborting a trial already in progress.") (citation omitted)
(bracketed text in original); United States v. Bradshaw, 281 F.3d
278, 285 (1st Cir. 2002) ("[The] lower court's refusal to grant
the appellant's motion for a mistrial fell well within the wide
encincture of its discretion").

   "Declaring a mistrial is a last resort, only to be implemented
if the taint is ineradicable, that is, only if the trial judge
believes that the jury's exposure to the evidence is likely to
prove beyond realistic hope or repair." United States v. Trinidad-
Acosta, 773 F.3d 298, 306 (1st Cir. 2014) (quotation and citation
omitted).  Courts assess the "totality of the circumstances,"
considering, *inter alia*, the propriety of a curative instructive,
the timeliness of judicial intervention, and whether the defendant
"successfully rebutted the presumption that the jury [will follow]
the judge's instructions."  United States v. Apicelli, 839 F.3d
75, 86 (1st Cir. 2016) (quotation and citation omitted); United
States v. DeCologero, 530 F.3d 36, 54 (1st Cir. 2008) (holding
that a defendant moving for a mistrial must "demonstrate the

**Criminal No.** 24-090 (FAB)                                                        5

existence of some special prejudice that the court [cannot] remedy

through other means") (internal citation and quotation omitted).

## III. Discussion

Martínez sets forth five arguments in support of her motion

for a mistrial.  (Docket No. 133 at p. 2.)  First, she asserts

that the Court improperly intervened during the testimony of

Jocelyn Hernández ("Hernández"), a USPS supervisor.  Id. at p. 3.

Second, Martínez contends that the Court stymied her trial strategy

by identifying defense witnesses to the United States.  Id. at

p. 5.  Third, she avers that testimony regarding the punishment

for delay of mail contaminated the trial.  Id. at p. 7.  Fourth,

Martínez maintains that the Court improperly curtailed the

impeachment of a government witness.  Id. at p. 10.  Fifth, she

argues that the Court unduly obstructed cross-examination,

exasperating defense counsel and causing her frustration.  Id. at

p. 15.

### A.    Judicial Interrogation

Martínez requests a mistrial, citing "undue interference

by the Court [in asking]" questions to "bring the factual narrative

and/or elements of the offense by a witness."  (Docket No. 133 at

p. 3.)  According to Martínez, the following questions exemplify

judicial overreach:

**Criminal No.** 24-090 (FAB)                                          6

**United States:**  Okay.  And where do you need to scan them?

**Hernández:**  In front of the house.  If your house is on the 4 of Calle Cerdo, you need to be in front of [non-English language] to deliver.

**Court:**  So, in other words, you have to be in front of the house to which the mail is addressed.

**Hernández:**  Yes.

**Court:** - to be able to scan it.

**Hernández:**  Yes.  And I'm saying this because we do those scannings with a scanner.  We have a scanner, and that scanner has a GPS so – for this, for the integrity of the situation, of the process, you need to be in front of the house so the GPS throws you that, that – like you were scanning, you scanned that package in front of this place.

**Court:**  Okay, so is that for any letter?

**Hernández:**  I'm sorry?  No.  I'm talking about scannable items, if that's the case.

**Court:**  What –

**Hernández:**  Scannable items is packages, everything that has a barcode.

**Court:**  Okay.

**United States:**  Certified has a barcode?

**Hernández:**  Yes, yes.

**United States:**  And –

**Court:**  Excuse me.  You mentioned that, as a mail carrier, there is handbook in which the mail carrier has concerning all types of mail, packages, et cetera.  And you included political mail.  What do you mean by political mail?

**Hernández:**  Political mail, it's right now whenever you are going to deliver ballots.

**Court:**  Okay.  Ballots.

**Hernández:**  Ballots, yes.  Because we have, in the political mail side, we have two:  We have campaign mail.  It's everything that is [non-English language].

**Interpreter:**  Campaigning.

**Hernández:**  We have political mail that is actually the ballots.

**Court:**  Okay.  So that's the same thing as electoral mail, [non-English language].

**Hernández:**  Yes.

**Court:**  Okay, All right.  Go ahead.

                          . . .

**Court:**  So the GPS, in the barcode mail, when you scan it, the GPS will show that you are doing it in front of the house to which the mail has been sent?

**Hernández:**  Yes.

                          . . .

**Court:**  Okay.  In the one in the bottom, the one in the official election mail, "Urbanization Villa Prades" and "602 Julio C. Arteaga" are on the same line.  Did you see that?

**Hernández:**  Yes, sir.

**Court:**  Does that have any effect in the delivery of that mail?

**Hernández:**  No, sir.

**Court:**  Thank you.

                          . . .

**Hernández:**  When you're there, and there is nobody over there, you just scan the package, the barcode, as you can put like a – I forget the scanning.  Like, you have specific, like, no, no, no secure location of no access. No secure location is mostly.  You scan that, and it's give you the opportunity to scan that pink, the pink one.  So that barcode is associate to that pink form. So you have to scan both.

**Court:**  Does that also demonstrate that you were in front of the house?

**Hernández:**  Yes.  Because, again, the scanner has the GPS, and every single scan that you do, it give [sic] you like:  I'm doing this here.

**Court:**  Okay.  So you scan the mail-piece barcode, and you scan the pink-slip barcode, both.

**Hernández:**  Both, yes.

(Docket No. 120 at pp. 10-11, 13, 31, 65-66.)[3]

The Court is "not a mere umpire," but rather "the governor of the trial for the purpose of assuring its proper conduct and has a perfect right – albeit a right that should be exercised with care – to participate actively in the trial proper." United States v. Foistner, Case No. 22-1420, 2024 U.S. App. LEXIS 17243, at *5 (1st Cir. July 15, 2024) (citing Logue v. Doe, 103

---

[3] Martínez misconstrues judicial interrogation, citing two examples of alleged error that are wholly unrelated to the Court's participation in direct examination.  First, she contends that the Court erred in permitting the United States to question Hernández regarding immunity for violations of federal law. (Docket No. 133 at p. 4.)  Second, Martínez contends that the Court erred by "[refusing] to determine if the witness testifying was testifying as an expert or as a lay witness." Id. at p. 5.  Because these alleged errors fall beyond the purview of judicial interrogation, the Court need not consider the testimony pertaining to immunity for violations of federal law or the expert witness designation in its analysis.

F.3d 1040, 1045 (1st Cir. 1997)) (internal quotation omitted).
This right to participate encompasses the prerogative to "[ask]
questions, to elicit facts [and] to facilitate a clear presentation
of the issues."  United States v. Dudley, 100 F.4th 74, 84 (1st
Cir. 2024) (citation and quotation omitted); see Logue, 103 F.3d
at 1045 ("[It is] beyond cavil that a trial judge in the federal
system retains the common law power to question witnesses and to
analyze, dissect, explain, summarize, and comment on the
evidence.").  Indeed, Federal Rule of Evidence 614 provides that
the Court "may examine a witness regardless of who calls the
witness."  Fed. R. Evid. 614(b).

The First Circuit Court of Appeals affords the "widest
possible latitude" to district courts "in making judgments about
the need to clarify testimony."  United States v. Rosario-Peralta,
199 F.3d 552, 560-61 (1st Cir. 1999).  District courts are
prohibited from "becoming an advocate or otherwise [using their]
judicial powers to advantage or disadvantage a party unfairly."
Logue, 103 F.3d at 1045 (citation omitted). Judicial interrogation
"must be balanced" and conducted in a fair manner.  Id.  To
establish error, Martínez must demonstrate "serious prejudice."
Id.  Prejudice does not arise from "the damaging truth that the
questions might uncover."  United States v. Rivera-Rodríguez, 761
F.3d 105, 113 (1st Cir. 2014).  "[If] a trial court's questioning

of a witness exposes bad facts, inconsistencies, or weaknesses in
the case itself, the exposure itself is not the worrisome
prejudice." Id. Rather, prejudice is "problematic when the court
gives the impression that it has an opinion on the correct or
desirable outcome of the case." Id. (citation omitted).

        Martínez maintains that the Court's questions "usurp[ed]
the role of a party within the adversarial system," "emphasized
the Government's theory," and eroded the supposition that the
"mailings had insufficient addresses or incorrect formats."
(Docket No. 133 at pp. 3-4.) Essentially, her argument rests on
the proposition that judicial interrogation revealed evidence
favorable to the United States, not that the Court expressed an
opinion regarding the merits of the case. The Court's questions
merely attempted to clarify the delivery of certified mail,
including the use of technology to record the location of mail
carriers at the moment of delivery. See, e.g., United States v.
González-Torres, 980 F.2d 788, 792 (1st Cir. 1992) (holding that
thirty-nine questions "which addressed the specific dates when
[the defendant] met with Castillo, when, where, and how defendant
obtained his passport . . . fell within the judge's role as
moderator of the trial"). These questions are innocuous and do
not reveal whether the Court has an opinion on the proper
resolution of this criminal action. Id. ("The trial judge may, if

**Criminal No.** 24-090 (FAB)                                                        11

he deems necessary, examine the witnesses in order to provide a

clear presentation of the issues, so long as an attitude of

impartiality is preserved.") (citation of omitted).  Consequently,

Martínez's judicial interrogation argument is unavailing.

      **B.**    **Defense Witness Identification**

      Martínez served USPS employees with subpoenas pursuant

to Federal Rule of Criminal Procedure 17.  She purports that the

Court "laid out the defense's witnesses to the Government without

any reason . . . giving an undue advantage to the Government."

(Docket No. 133 at p. 6.)  Martínez suffered no prejudice, however,

because the mystery witness had revealed themselves to the United

States.    On January 21, 2025, USPS employee Carlos Rivera

("Rivera") informed the United States that he received a subpoena

to testify at trial.  (Docket No. 121 at p. 4.)  Accordingly, the

United States knew that Martínez issued the Rule 17 subpoena well

before the Court's disclosure.  It is not as though the Court

shared the secret recipe for Coca-Cola.  The motion for a mistrial

sets forth the discovery regime contained in Federal Rule of

Criminal Procedure 16, but does not identify the harm resulting

from the Court's disclosure.  (Docket No. 133.)  Because Martínez

suffered no prejudice, this disclosure cannot sustain her motion

for a mistrial.

**Criminal No.** 24-090 (FAB)                                              12

C.    **Testimony Regarding Penalties for the Delay of Mail**

Martínez argues that testimony provided by Hernández warrants the declaration of a mistrial. (Docket No. 133 at p. 7.) During direct examination, the United States requested that Hernández read the contents of Exhibit 68 to the jury. (Docket No. 120 at p. 26.) Hernández complied. Id. Exhibit 68 contains the USPS employee oath, including the language set forth below:

> I understand that my duty to report immediately to my supervisor or to a postal inspector any information . . . I may have of any theft . . . pilferage, unlawful delay of mail or evidence of intent to commit such a crime. I fully understand that it's a crime, punishable by fine or . . . imprisonment or both to . . . knowingly and willfully obstruct or delay the mail – or delay the mail or to steal or attempt to steal mail of any kind, even if [it] appears to be worthless, or to allow others [to do so].

Id. at pp. 26-27. Martínez claims that the Court allowed the admission of this evidence "over [her] objection." (Docket No. 133 at p. 7.) The trial transcript belies this assertion. The Court explicitly asked defense counsel, "are you objecting to [Exhibit 68]?" (Docket No. 120 at p. 25.) Defense counsel answered, "No." Id. USPS supervisor Carla Ortiz also read from the USPS employee oath (Exhibit 37). (Docket No. 147 at p. 3.) Martínez subsequently reversed course and objected, prompting the Court to redact this exhibit. On January 28, 2025, the Court provide the following jury instruction:

**Criminal No.** 24-090 (FAB)                                                    13

> Now, I want to bring something up to you.  During the testimony or Ms. Ortiz, and perhaps during the testimony of Jocelyn Hernández, Exhibit 37 was, part of Exhibit 37 was read to you, and the part – part of that exhibit indicates what the law says the punishment is for this, for the crime for with Ms. Martínez is on trial for.  The punishment in a criminal case is the sole discretion of the judge.  So what we're going to do is we are, you're going to forget about what was read and what's in the exhibit, as far as the punishment, and we will, we will substitute that exhibit with another exhibit, with that part, where it has the punishment for this crime redacted, in other words, taken out of the exhibit.  Okay?  So, remember, punishment is only for me to decide, not you.

(Docket No. 147 at pp. 3-4.)

Curative instructions are "ordinarily an appropriate method of preempting a mistrial." United States v. Peake, 804 F.3d 81, 95 (1st Cir. 2015) (citation and quotation omitted). Courts presume that juries follow instructions. United States v. González-Vázquez, 219 F.3d 37, 48 (1st Cir. 2000). The instruction provided by this Court is explicit and thorough.  Nothing in the record suggests that the jury will disregard this curative instruction.  Accordingly, testimony regarding the punishment for delay of mail is no reason to declare a mistrial.  See, e.g., United States v. Maccini, 721 F.2d 840, 847 (1st Cir. 1983) ("Waiting until the next day to give these instructions did not prejudice the defendant.  If anything, the lapse of time aided in allowing the jury to forget what, in the context of a six-day trial, is a de minimis incident.").

### D.    The Alleged <u>Giglio</u> Violation

At the conclusion of Hernández's direct examination, the United States provided Martínez with a document from the witness's personnel file.  (Docket No. 120 at p. 80.)  The United States disclosed this document in an abundance of caution to "go beyond" its obligation to disclose impeachment material.  Id. at p. 81; see <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972) (holding that the United States must disclose impeachment material when "the reliability of a given witness may well be determinative of guilt or innocence").  The document is a "Notice of Proposed letter of warning in lieu of Seven (7) Day Time-off Suspension."  (Docket No. 152 at pp. 15-17.)  Postmaster José Marengo stated that Hernández allowed a USPS to incur overtime in violation of her duties as a supervisor.  Id. at p. 15.

Martínez avers that the document constitutes impeachment material because Hernández "was reprimanded for sending out delivery [sic] certified mail that should have been scanned at the station and not at the place of delivery."  (Docket No. 133 at p. 10.)  She misrepresents the contents of this document.  The basis for reprimand states that:

> On February 11, 2022, [Hernández] failed to make sure
> carrier Torres RD worked only 8 hours.  Due to your
> decision or lack of the employee incurred in penalty
> overtime.  You were instructed at the beginning of the
> week that no employee was allowed to work penalty

**Criminal No.** 24-090 (FAB)                                          15

> overtime and you still failed to do so.  On February 12,
> 2022 an express mail tracking #9570110550732042385533
> arrived for route 15.  This route is closed on weekends
> and the express mail did not get a stop the clock event
> creating a failure on our part and the loss of money
> since we have to return the cost of the PME.

(Docket No. 152 at p. 15.)  This document has no impeachment value.

Whether Hernández violated the USPS policy on overtime is

irrelevant to her credibility as a witness, and has no bearing on

her character for truthfulness.  Accordingly, Martínez's <u>Giglio</u>

argument has no merit.

       **E.**    **The Cross-Examination of Jocelyn Hernández**

       Martínez moves for a mistrial because the Court

"interrupted [defense counsel], asked for proffer of documents

presented, curtailed [their] flow, testified on behalf of witness,

vouched for witness, and did not permit [them] to recross-examine."

(Docket No. 133 at p. 13.)  She cites seventeen instances in which

the Court interrupted cross-examination or issued an adverse

ruling.  <u>Id.</u> at pp. 13-19.  The Court reviewed the pertinent

excerpts of the transcript.  The parameters established by the

Court during cross-examination are consistent with the Federal

Rules of Evidence.  That the Court's insistence on compliance with

these rules may have caused counsel "great distress and

frustration," is no reason to declare a mistrial.  <u>Id.</u> at p. 14.

Defense counsel's feelings and reactions to the Court's rulings

**Criminal No.** 24-090 (FAB)                                                    16

are immaterial to the mistrial analysis.  Consequently, Martínez's

motion for a mistrial (Docket No. 133) is **DENIED.**

## IV.  Conclusion

For the reasons set forth above, the Court **DENIES** Martínez's

motion for a mistrial.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 4, 2025.


s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE